U.S. DISTRICT COURT E.D.N.Y.
★ NOV 2 0 2013 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GM PRODUCE SALES LCC,

                                Plaintiff,

   -against-

SAM JIN WORLD TRADING INC., JIN JO
LEE, and KYUNG MIN LEE,

                             Defendants.
------------------------------------------------------------x

**MEMORANDUM & ORDER**

12-CV-4192 (ENV) (JO)

**VITALIANO, D.J.**

      On August 22, 2012, plaintiff GM Produce Sales LLC ("GM Produce") commenced this action against defendants Sam Jin World Trading Inc. ("World Trading"), Jin Jo Lee ("Jin Jo") and Kyung Min Lee ("Kyung Min"),[1] seeking relief under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a et seq. Plaintiff now moves for summary judgment, pursuant to Federal Rule of Civil Procedure 56, against pro se defendant Kyung Min, who has failed to oppose the motion or respond in any other manner. For the reasons stated below, plaintiff's motion is granted.

### Background

      The following facts are drawn from the complaint, answer, and the submissions of plaintiff on its motion. The facts are construed, as they must be, in

---

[1] The individual defendants are brother and sister.

1

the light most favorable to the nonmoving party. See <u>Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.</u>, 473 F.3d 450, 456 (2d Cir. 2007). The submissions include a statement of undisputed facts pursuant to Local Rule 56.1 submitted by plaintiff.[2]

Beginning on July 1, 2011 and continuing until August 11, 2011, plaintiff sold and delivered agricultural commodities worth $19,970.30 to defendant World Trading. The buyer accepted delivery, did not dispute the invoices, and never paid plaintiff for the goods. About a year later, on August 22, 2012, GM Produce sued defendants, seeking to enforce PACA's trust provisions, which require produce buyers to hold perishable agricultural commodities, along with receivables and proceeds from the sale of those commodities, in trust for the benefit of unpaid sellers until full payment has been made. 7 U.S.C. § 499e(c)(2).

Plaintiff's complaint was served on defendant World Trading on or about September 18, 2012, and on individual defendants Jin Jo and Kyung Min on or about September 24, 2012. Defendants failed to answer or otherwise respond. A certificate of default was entered by the Clerk of Court on October 2, 2012. Then, plaintiff moved for entry of a default judgment on October 3, 2012, again without response. On October 22, 2012, Kyung Min Lee moved to set aside the notation of

---

[2] Plaintiff served timely motion papers on Kyung Min on or about February 8, 2012. The notice of motion stated, in capital letters: "The claims and defenses you assert in your answer may be dismissed without a trial if you do not respond to this motion on time . . . ." Plaintiff also submits that it served on defendant, in compliance with Local Rule 56.2: (1) a copy of Fed. R. Civ. P. 56 and (2) a "Notice to <u>Pro Se</u> Litigant Who Opposes a Motion for Summary Judgment," explaining the potential consequences of not opposing a motion for summary judgment. (Pl. Aff. of Service, 1; Local Rule 56.2.)

2

default and filed an answer to the complaint. By order, dated January 4, 2013, the Court granted Kyung Min's motion, and entered a default judgment against defendants World Trading and Jin Jo, with the amount of damages to be determined after a trial on the merits of the claim against Kyung Min.

At a January 25, 2013 conference before Magistrate Judge James Orenstein, Kyung Min provided sworn testimony concerning his involvement in the day-to-day operations of World Trading. (Pl. 56.1 Statement, Exhibit E, Transcript of Hearing Before Magistrate Judge Orenstein ("Hrg Tr."), 9–18.) The parties agreed that no further factual development was needed, and, as a result, Magistrate Judge Orenstein declared discovery closed. The Court then granted plaintiff's request for permission to file a motion for summary judgment, which was fully briefed and docketed on ECF on March 13, 2013. Kyung Min failed to formally respond to the motion, though he had effectively responded to the motion in his testimony before Judge Orenstein.

## Standard for Summary Judgment

Pursuant to Rule 56, a federal district court must grant summary judgment upon motion and finding, based on the pleadings, depositions, interrogatory answers, admissions, affidavits, and all other admissible evidence that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The initial burden is on the moving party to

demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004). In determining whether the moving party has met this burden, a court must construe all evidence in a light most favorable to the nonmoving party, resolving all ambiguities and inferences in its favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247–48 (emphasis in original); Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 90 (2d Cir. 2002). Material facts are those which, given the substantive law, might affect the suit's outcome. Anderson, 477 U.S. at 248.

If the moving party makes a prima facie showing that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and put forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002). In so doing, the nonmoving party may not rely on conclusory allegations or speculation. Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (citing D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)); Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts

4

as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

If the motion is unopposed, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R. Civ. P. 56(e). However, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004). See also Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001) ("[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.").

Mindful that defendant is proceeding pro se, the Court additionally reads his papers liberally and interprets them as raising the strongest arguments they suggest. See Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

### Discussion

PACA was enacted in 1930 to regulate the interstate sale and marketing of perishable agricultural commodities. Cooseman Specialties, Inc. v. Gargiulo, 485 F.3d 701, 705 (2d Cir. 2007). It establishes a statutory trust for the benefit of sellers and suppliers. Id.; see also 7 U.S.C. § 499e(c)(2). As a PACA trustee, a buyer who

5

purchases produce for re-sale is charged with a duty "to insure that it has sufficient assets to assure prompt payment for produce and that any beneficiary under the trust will receive full payment." D.M. Rothman & Co. v. Korea Commercial Bank of N.Y., 411 F.3d 90, 94 (2d Cir. 2005) (internal quotation marks omitted). An individual who is in the position to control trust assets and does not preserve them has breached a fiduciary duty and can be held personally liable for that breach. Cooseman, 485 F.3d at 705–06.

A. The Existence of a PACA Trust

For a produce seller to recover proceeds from a PACA trust under § 499e, it must establish the following:

> (1) The commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by the law.

A & J Produce Co. v. Chang, 385 F. Supp. 2d 354, 358 (S.D.N.Y. 2005).

Here, all five elements are met. First, the goods sold—mangos—qualify as perishable agricultural commodities under the statute.[3] Second, Kyung Min admits that World Trading is a PACA-licensed dealer "engaged in the business of buying and selling wholesale quantities of produce in interstate commerce." (Def. Ans. ¶ 4.)

---

[3] Perishable agricultural commodities governed by PACA include "[f]resh fruits and fresh vegetables of every kind and character." 7 U.S.C. § 499a(b)(4)(A).

6

Third, plaintiff contends—and the invoices and sworn testimony support its contention—that defendants failed to pay GM Produce. (Pl. 56.1 Statement, Exhibit D, 1–3; Pl. Shiba Aff. ¶ 8.) And, finally, the billing statements that were sent to World Trading properly preserved plaintiff's PACA trust rights.[4] (Pl. 56.1 Statement, Exhibit D, 1–3.)

B. Individual Liability Under PACA

"An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." Coosemans, 485 F.3d at 705–06. In cases involving multiple officers or shareholders, such as this one, "courts have been reluctant to impose individual liability absent clear uncontested allegations or proof that the

---

[4] GM Produce's billing statements comply with all three independent requirements for proper notice under the PACA "invoice method" of notification. See A & J Produce Corp. v. Chang, 385 F. Supp. 2d 354, 361–62 (S.D.N.Y. 2005); 7 U.S.C. § 499e(c)(4). First, the bills appear to be "ordinary and usual," meaning they are "communications customarily used between parties to a transaction in perishable agricultural commodities . . . for billing or invoicing purposes" (7 C.F.R. § 46.46(a)(5)) that clearly and correctly identify both the seller and buyer. See Horizon Mktg. v. Kingdom Int'l Ltd., 244 F. Supp. 2d 131, 141 (E.D.N.Y. 2003). Second, the parties correctly invoked the default payment period established by PACA regulations (7 C.F.R. § 46.2(aa)(5)), and therefore were not required to specify a particular payment period on the face of the invoices. Third, the billing statements included, on their face, the following statutorily-required language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 U.S.C. § 499e(c)(4).

individual sued was in a position to assert control over PACA transactions." <u>Avanti Enterprises, Inc. v. A&T Produce, Inc.</u>, No. 09-CV-1185, 2010 WL 3924771, at *4 (E.D.N.Y. July 21, 2010), <u>report and recommendation adopted</u>, 2010 WL 3909243 (E.D.N.Y. Sept. 30, 2010). However, "[e]ach case turns on its own facts," and as a result, "there is no bright line litmus test" for individual liability under PACA. <u>Weis-Buy Farms, Inc. v. Quality Sales LLC</u>, No. 11-CV-2011, 2012 WL 280617, at *12 (D. Conn. Jan. 31, 2012).

The parties agree that Kyung Min, along with Jin Jo, was an officer and shareholder of World Trading. (Def. Ans. ¶ 17; Hrg. Tr. 10.) Kyung Min contends in his answer, however, that he was not in a position of control over the day-to-day operations of the company or trust assets. An independent review of the record, made necessary by Kyung Min's failure to oppose the motion, reveals that there are no material facts in dispute with regard to whether defendant was in a position of control over PACA trust assets. By his own admission, Kyung Min had check-writing authority, received a salary,[5] and played a role in company decision-making

---

[5] Some cases suggest that receipt of a salary is a factor that goes against imposing personal liability under PACA because it demonstrates that the individual was merely an employee, rather than someone in a position of control. See, e.g., <u>Weis-Buy Farms</u>, No. 11-CV-2011, 2012 WL 280617, at *14–15. In other cases, however, receiving a salary is a factor in favor of individual liability. For example, where the individual in question was a one-third shareholder and vice president, in addition to being a salaried employee, the court found that his salary was evidence of his involvement in "the day-to-day functions of the business," and therefore a factor that supported holding him personally liable. <u>Anthony Marano Co. v. MS-Grand Bridgeview, Inc.</u>, No. 08-CV-4244, 2010 WL 5419057, at *11 (N.D. Ill. Dec. 23, 2010).

8

and the management of World Trading employees. (Hrg. Tr. 9–13.) Although defendant claims that he "[doesn't] do day-to-day operations of the company" (id. at 14), this conclusory statement is belied by his many other more specific admissions. See Golden Pac. Bancorp, 375 F.3d at 200.

Kyung Min also attempts to disclaim individual responsibility by emphasizing the leadership role of his sister, Jin Jo. But even accepting as true defendant's contention that his sister was generally in charge of making business and financial decisions for World Trading, Kyung Min can be found individually liable as well. "More than one person can be in a position to control and affect [] trust assets." Anthony Marano Co., No. 08-CV-4244, 2010 WL 5419057, at *10 (citing Shepard v. K.B. Fruit & Vegetable, Inc., 868 F. Supp. 703, 706 (E.D. Pa. 1994)). Consequently, a determination that Jin Jo was responsible for trust assets does not preclude a finding of liability as to other similarly situated defendants.[6] On this record, the Court finds that Kyung Min, as an officer and shareholder of World Trading with check-signing authority,[7] who was involved, at least somewhat, in the day-to-day operations of the business, was, like Jin Jo, indeed in a position to assert control over PACA trust assets belonging to plaintiff. Accordingly, plaintiff's motion for summary judgment against Kyung Min is granted.

---

[6] The Court granted plaintiff's motion for default judgment with respect to defendants World Trading and Jin Jo on January 4, 2013.

[7] Kyung Min's concession that he had check-signing authority for World Trading is unlimited. Consequently, he admits that he had check-signing authority over the account or accounts in which PACA trust assets were deposited.

9

C. <u>Damages</u>

On January 4, 2013, the Court ruled that damages for all defendants would be determined at Kyung Min's trial. Since a trial on the merits is no longer necessary, the Court will refer the matter to Magistrate Judge Orenstein for an inquest on damages, and to determine whether plaintiff is entitled to interest or attorney's fees.

## Conclusion

For all the foregoing reasons, plaintiff's motion for summary judgment against defendant Kyung Min is granted. This matter is hereby respectfully referred to Magistrate Judge Orenstein to (1) conduct an inquest on damages as to all defendants, and (2) address plaintiff's request for pre-judgment interest, costs and attorney's fees, if applicable.

SO ORDERED.

Dated: Brooklyn, New York
       November 15, 2013

/S/ Judge Eric N. Vitaliano
_____
ERIC N. VITALIANO
United States District Judge

10